IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

TERRI J. KNIGHT,                          )
                                          )
            Plaintiff,                    )
                                          )
                                          )  Case No. CIV-20-368-KEW
                                          )
COMMISSIONER OF THE SOCIAL                )
SECURITY ADMINISTRATION,                  )
                                          )
            Defendant.                    )

## OPINION AND ORDER

Plaintiff Terri J. Knight (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that she was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 52 years old at the time of the ALJ's decision. She has a high school education. Claimant alleges an inability to work beginning on June 8, 2018, due to limitations resulting from depression, anxiety, social anxiety, and back problems.

## Procedural History

On June 8, 2018, Claimant filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Her application was denied initially and upon reconsideration. On January 30, 2020, ALJ Luke Liter conducted an administrative hearing by video from Tulsa, Oklahoma. Claimant participated in the hearing from Muskogee, Oklahoma. On March 3, 2020, ALJ Liter entered an

unfavorable decision. Claimant requested review by the Appeals Council, and on August 14, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with additional limitations.

### Errors Alleged for Review

Claimant alleges that the ALJ committed error by (1) failing to follow the required legal standards resulting in his RFC assessment and step-five findings being unsupported by substantial evidence, and (2) failing to properly assess the consistency of Claimant's complaints with the record evidence.

### Consideration of Mental Health Limitations

In his decision, the ALJ found Claimant suffered from severe impairments of lumbar spine degenerative changes, major depressive disorder, anxiety, and cognitive disorder. (Tr. 12). He determined Claimant could perform light work with additional limitations. Claimant could lift/carry and push/pull twenty pounds occasionally and ten pounds frequently. She could sit for six hours in an eight-

4

hour workday and stand and/or walk for a combined total of six hours in an eight-hour workday. Claimant could understand, remember, and carry out simple tasks, public contact could not be part of her job duties, and she could only tolerate "superficial (brief and cursory) contact with coworkers and supervisors." (Tr. 15).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of laundry sorter, assembler, and folder, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 22). As a result, the ALJ concluded Claimant has not been under a disability since June 8, 2018, the amended alleged onset date of disability. (Tr. 22).

Claimant makes several arguments regarding the ALJ's assessment of her mental impairments and limitations. She first argues the ALJ failed to account for a moderate limitation in the RFC regarding her ability to understand, remember, and apply information, which she alleges was contrary to his own findings and the limitations imposed by the reviewing psychologists.

In the decision at step three, the ALJ determined Claimant had a moderate limitation in understanding, remembering, or applying information. Additionally, he found Claimant had a moderate limitation in interacting with others and in concentrating, persisting, or maintaining pace and a mild

5

limitation in adapting and managing herself. (Tr. 13-14). The ALJ correctly noted that the limitations he identified when assessing the "paragraph B" criteria were not an RFC assessment, and that the mental RFC required a more detailed assessment of Claimant's mental functioning. (Tr. 15); *see* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). Moreover, case law supports that finding a limitation for the "paragraph B" criteria does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment. *See, e.g., Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.").

The ALJ also considered the opinions of the reviewing psychologists. Claimant argues the agency psychologists determined she was moderately limited in understanding, remembering, and applying even simple instructions, yet the ALJ did not account for such limitations in the RFC or in the hypothetical questions to the VE. The state agency psychologists found Claimant retained "the ability, on a sustained basis," to understand and remember

6

simple instructions, to carry out simple instructions, and to make simple decisions and maintain concentration and attention for extended periods. They also determined Claimant had the ability to respond appropriately to supervisors, co-workers, and work situations that had limited public contact. Claimant could respond appropriately to changes in a routine work setting. (Tr. 69-70, 87). The ALJ acknowledged these findings in the decision and found them persuasive. He specifically noted that "[C]laimant's subjective statements [were] not fully consistent with the objective evidence, and she is not limited further." (Tr. 20-21). The ALJ included limitations in Claimant's RFC limiting her to understanding, remembering, and carrying out simple tasks with no public contact and superficial contact with co-workers and supervisors. (Tr. 15). This Court finds no error in the ALJ's evaluation of the reviewing psychologists' opinions and finds he appropriately accounted for their limitations in the RFC.

Claimant next contends that the evidence of record supports a limitation greater than the "moderate" limitation the ALJ assigned regarding her ability to understand, remember, and apply information. She claims the ALJ minimized findings favorable to disability, including her Global Assessment of Functioning ("GAF") score, her score on the Montreal Cognitive Assessment ("MoCA"), and he determined she had made "progress" when probative evidence in the record indicated otherwise.

7

The ALJ specifically discussed the GAF scores assigned to Claimant by consulting psychologist Kenny Paris, Ph.D., and the GAF scores assigned to Claimant during her treatment. He noted Dr. Paris assigned Claimant a GAF score of 45, acknowledging that this indicated "the presence of serious symptoms." The ALJ concluded that based upon the longitudinal treatment evidence, a GAF of 45 was not "fully consistent" with such evidence. (Tr. 18). The ALJ also considered the GAF score assigned to Claimant during her treatment at CREOKS Behavioral Health Services. He determined that considering her mental health treatment at CREOKS as a whole, a GAF score of 45 "does not show findings fully consistent with [the] relatively low level of GAF functioning." (Tr. 19). This was all the ALJ was required to do. *See Lopez v. Barnhart*, 78 Fed. Appx. 675, 678 (10th Cir. 2003) ("'While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.'"), quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

Moreover, the ALJ also sufficiently accounted for Claimant's MoCA score of 15 and her treatment notes from CREOKS and Green County Behavioral Health Services when considering Claimant's mental RFC. He noted that Claimant scored a 15/30 on the MoCA during her examination with Dr. Paris, but that Dr. Paris had considered not only Claimant's MoCA but also her low average intellectual functioning and impaired memory when determining that

8

Claimant had "adequate judgment to think abstractly and function appropriately socially and emotionally." (Tr. 17-18). The reviewing psychologist on reconsideration also considered the MoCA score and determined Claimant's cognitive functioning was limited (Tr. 20-21, 81-82, 85-87), but she did not have a cognitive impairment as serious as that suggested by Claimant or contrary to the ALJ's RFC assessment. The ALJ further discussed Claimant's treatment records from CREOKS and Green Country, correctly noting that Claimant experienced some improvement during her treatment and her attention, memory, and concentration were often normal. (Tr. 19-20, 366-428, 431-44). There is no error in the ALJ's determination that Claimant was moderately limited in her ability to understand, remember, and apply information.

Claimant also argues that the ALJ failed to properly consider the opinion of consulting psychologist Dr. Paris, and therefore failed to include pertinent mental limitations in the RFC. Claimant, however, does not argue what specific limitations should have been included in the RFC based upon Dr. Paris's examination. Moreover, the ALJ discussed Dr. Paris's examination of Claimant in detail (Tr. 17-18, 318-23) and determined that "the psychological aspect of his narrative medical opinion [was] persuasive." The ALJ indicated that he "integrated Dr. Paris's objective findings" and had considered "the clinical history detailed by Dr. Paris and the claimant's subjective statements[.]" He determined that Dr.

9

Paris's "examination findings support[ed] his mental medical opinion" and concluded that "Dr. Paris's objective findings and the below average abilities identified do not support greater limitation than found in th[e] decision." (Tr. 18). This Court finds no error in the ALJ's evaluation of Dr. Paris's examination findings and opinion.

Claimant further asserts that the ALJ failed to develop the record regarding her diagnosis of PTSD and the suggestion by Dr. Paris that a more specific assessment might be needed to determine whether her memory issues were cognitive in nature. First, the ALJ noted Claimant's diagnosis of PTSD when she began her treatment at Green County Health, but she points to no evidence suggesting her diagnosis resulted in further limitations beyond those included in the RFC. Second, the ALJ specifically addressed Dr. Paris's examination as well as counsel's request that the ALJ order neurocognitive testing of Claimant. Dr. Paris indicated in his report that "[a] more [thorough] assessment of memory functioning may help to pinpoint a more specific cognitive problem." (Tr. 323). The ALJ acknowledged Dr. Paris's comment and counsel's request that Claimant undergo neurocognitive testing. In denying the request, the ALJ relied upon the numerous mental health treatment records, the objective memory findings included in the record, Claimant's treatment at two mental health facilities, which included diagnoses and treatment with prescription medication, and

the state agency psychologists' determinations with the benefit of the treatment records and Dr. Paris's evaluation. Based upon all this evidence, the ALJ concluded that "[t]he current medical source evidence from the treating sources is adequate to affirm the prior administrative medical findings completed at the lower levels of review." (Tr. 21).

The Court finds there was no error by the ALJ in failing to order another consultative examination associated with Claimant's diagnosis of PTSD or for additional neurocognitive testing. Although "the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised[,]" the duty "is not unqualified." *Wall v. Astrue*, 561 F.3d 1048, 1062-63 (10th Cir. 2009). Here, the ALJ explained his reasons and found the evidence in the record was adequate to formulate Claimant's mental RFC. Accordingly, "there was no need to further develop the record because sufficient information existed for the ALJ to make [his] disability determination." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008).

Finally, Claimant contends the ALJ's step-five determination that she can perform the jobs of laundry sorter, assembler, or folder is unsupported by the record. She asserts there is a conflict because she is limited to an RFC for "simple tasks and simple decisions," but the three step-five jobs the ALJ determined she can perform all require a reasoning level of two. Claimant

11

maintains such jobs require that a worker "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving several concrete variables in or from standardized situations." *See* DOT # 361.687-014 (laundry sorter), # 706.684-022 (assembler), and # 369.687-018 (folder). She contends she can only perform jobs with a reasoning level of one, and the ALJ failed to resolve this conflict between the DOT and the VE's testimony in the decision.

In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), the Tenth Circuit found that jobs with a reasoning level of three were inconsistent with an RFC limiting a claimant to "simple and routine work tasks." It determined, however, that "level-two reasoning appears more consistent" with such an RFC. *Id.*; *see also Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (rejecting the argument that "simple, repetitive and routine work" should be construed as a limitation to jobs with a reasoning-level of one). This Court and others have routinely determined that level-two reasoning is consistent with simple tasks. *See, e.g., Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. Mar. 13, 2017)(finding "simple work" consistent with reasoning level of two); *Olsen v. Saul*, 2019 WL 4318486, at *4 (E.D. Okla. Sept. 12, 2019)(finding "simple tasks" consistent with reasoning level of two); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla., May 6, 2016) (finding "the ALJ properly relied on the jobs identified

by the VE with a reasoning level of two" where the RFC limited the claimant to "simple, routine, repetitive instructions.").

A review of the hearing testimony reveals that the hypothetical posed to the VE, which was later incorporated by the ALJ into the RFC, included, among others, limitations that Claimant could "understand, remember and carry out simple tasks." (Tr. 15, 53). Based on the ALJ's hypothetical question, the VE testified Claimant could perform the jobs of laundry sorter, assembler, and folder, all jobs with a reasoning level of two. (Tr. 53-54). Relying on *Hackett*, this Court finds there is no conflict between the ALJ's RFC limiting Claimant to understanding, remembering, and carrying out "simple tasks" and the jobs of laundry sorter, assembler, and folder.

Based on the evidence of her mental impairments, the ALJ determined Claimant was able to understand, remember, and carry out simple tasks. She should not perform jobs requiring public contact, but she was able to have superficial (brief and cursory) contact with supervisors and co-workers. The Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner, *see Casias*, 933 F.2d at 800; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007), and it therefore finds that the ALJ adequately accounted for Claimant's mental limitations in the RFC.

### Evaluation of Symptoms

Claimant also takes issue with the ALJ's evaluation of her

13

reported symptoms based upon all the errors the ALJ made in assessing her mental RFC, and because the ALJ failed to support his consistency determination with a proper consideration of the pertinent factors.

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of his evaluation of Claimant's subjective symptoms, the ALJ noted the two-step process set forth in Social Security Ruling 16-3p and the requirements under 20 C.F.R. § 416.929. (Tr. 15). He specifically summarized Claimant's subjective complaints

14

(Tr. 16) and discussed the objective mental health findings from Dr. Paris and Claimant's subjective statements made to him and Claimant's treatment at CREOKS and Green Country Behavioral Health Services. (Tr. 17-20). When considering the consistency of Claimant's subjective complaints, the ALJ noted findings by Dr. Paris contrary to her subjective statements (Tr. 17-18), treatment notes from CREOKS and Green Country showing Claimant's improvement with appropriate medication and case management (Tr. 19-20), mental health examination findings showing adequate to normal attention, memory, and concentration (Tr. 19-20), her ability to complete daily activities (Tr. 19), and the lack of evidence of medication side effects (Tr. 20).

The ALJ determined Claimant's statements about her mental symptoms were not fully consistent with the objective medical evidence or the other evidence in the record. (Tr. 19). He found that Claimant's "mental symptoms are less likely to reduce her capabilities to perform work-related activities to a greater degree than stated in the [RFC]." (Tr. 20). The ALJ concluded that based upon the evidence as a whole and Claimant's symptoms, she could function within the limitations included in the RFC assessment. (Tr. 21). This Court finds no error with the ALJ's evaluation of Claimant's subjective complaints, as the ALJ's evaluation was linked to the evidence and included specific reasons for his conclusions.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 11th day of January, 2023.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE